UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

DEBRA L. ROSS,

Plaintiff,

v.

COMMISIONER OF SOCIAL SECURITY,

Defendant.

6:13-cv-01129-TC

FINDINGS & RECOMMENDATION

COFFIN, Magistrate Judge:

Plaintiff brings this proceeding to obtain judicial review of the Commissioner's final decision denying plaintiff's application for disability insurance benefits and supplemental security income benefits.

Plaintiff asserts disability beginning May 15, 2009, due to degenerative disc disease of the lumbar spine, hypertension, hemochromatosis, depressive disorder, anxiety disorder, cognitive disorder, and somatoform disorder. After a hearing, an administrative law judge (ALJ) determined that plaintiff is not disabled. Plaintiff contends the ALJ erred in: (1) rejecting medical opinion; (2) rejecting plaintiff's testimony; (3) rejecting lay witness statements; and (4) evaluating plaintiff's impairments and finding plaintiff could perform the jobs of credit

Page 1 – FINDINGS & RECOMMENDATION

referencing clerk, laundry pricing clerk, hostess, bartender, telemarketer, retail sales, cashier, or survey taker.

A.   Medical Opinion

Plaintiff asserts that the ALJ improperly rejected Dr. Geurin's opinion. Dr. Geurin was plaintiff's treating doctor at the time. In order for an ALJ to reject the opinion of a treating doctor, even if that opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). Plaintiff argues that because the ALJ failed to explicitly reference Dr. Geurin or his opinion, the ALJ erred in describing plaintiff's limitations when presenting the hypothetical to the vocational expert.

In order to determine whether the ALJ properly rejected the treating doctor's opinion, the court must first determine whether the treating doctor gave an opinion. Dr. Geurin performed an examination of plaintiff on March 22, 2011. In that examination, Dr. Geurin noted that he "suspect[s] she suffers from somatization disorder." From his own statements, Dr. Geurin is not qualified to opine on plaintiff's psychiatric health. He states that a diagnosis of a somatization disorder "is best confirmed by comprehensive evaluation by a psychiatrist." Tr. 328. It appears that Dr. Geurin's opinion is that plaintiff ought to be evaluated by a psychiatrist before a diagnosis of a somatization disorder can be properly made. Therefore, the treating doctor did not offer an opinion regarding whether plaintiff had a somatization disorder.

The ALJ did acknowledge in his order that "[t]here has been discussion of a somatoform disorder." Tr. 20. However, the ALJ did not find the scant evidence suggesting the possibility of a somatization disorder to be credible, and instead attributed plaintiff's symptoms to the

Page 2 – FINDINGS & RECOMMENDATION

objective medical evidence presented in the record. Id. Specifically, the ALJ attributed plaintiff's symptoms to high iron levels in her blood. Id.

Drs. Schnitzer, Mozer, and Ostby each examined plaintiff. The medical reports of Dr. Schnitzer and Dr. Mozer do not reference a somatization disorder. Tr. 436-438, 413-417. Dr. Ostby did not diagnose plaintiff with a somatization disorder, but did reference allegations that a somatization disorder existed. Tr. 586. The ALJ stated that Dr. Ostby diagnosed the claimant with anxiety disorder and dysthymic disorder, but did not endorse a diagnosis of somatization. Tr. 19. This statement is supported by evidence in the record, in the form of Dr. Ostby's medical examination report. Tr. 585-586. It is worth noting that Dr. Ostby's examination occurred on May 31, 2011, roughly 2 months after Dr. Geurin's examination. Because no other medical examiner made a diagnosis, nor even a mention, of a somatization disorder before Dr. Geurin's examination, it is reasonable to assume that when the ALJ referenced the allegations of a somatization disorder, he was referring to Dr. Geurin's speculation, or other doctors' references to Dr. Geurin's speculation. Prior to Dr. Geurin raising the possibility of plaintiff suffering from a somatization disorder, there were no other references to the issue.

An ALJ has a "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). This duty is triggered by "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ did not find that the record was inadequate to allow for proper evaluation of the evidence. Dr. Geurin's speculation regarding plaintiff's alleged somatization disorder does not constitute ambiguous evidence. Because Dr. Geurin never made the diagnosis, and Dr. Ostby's

Page 3 – FINDINGS & RECOMMENDATION

psychological evaluation of the plaintiff did not endorse a somatization disorder, the ALJ had a full and fairly developed record from which to base his opinion.

Furthermore, plaintiff's previous attorney specifically requested that the ALJ not reference Dr. Geurin by name for fear of interfering with the doctor's ability to treat plaintiff in the future. Tr. 325-326. Because the ALJ did consider the fact that plaintiff may have a somatization disorder, and because plaintiff's attorney requested that the doctor's speculation regarding a potential somatization disorder be kept confidential, it is reasonable that the ALJ did not specifically address Dr. Geurin by name in the order. The ALJ considered the possibility of a somatization disorder, weighed it against other medical experts' opinions in the record, and found it not persuasive. This decision was based on specific and legitimate reasons supported by evidence in the record. The ALJ's decision to reject Dr. Geurin's speculation was proper.

B.  Plaintiff's Testimony

Plaintiff asserts that the ALJ improperly rejected her testimony regarding the severity and limiting effects of her alleged symptoms. If the objective medical evidence establishes that the claimant has an impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if the ALJ provides clear and convincing reasons for doing so. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).

The ALJ acknowledged that the objective medical evidence established that plaintiff has impairments that could reasonably be expected to produce some degree of the symptoms she alleged. Tr. 18. Plaintiff asserts that the ALJ failed to specifically address plaintiff's allegations of pain and fatigue. The ALJ did, however, address plaintiff's back problems and analyzed the related medical evidence. Id. Plaintiff was examined by Dr. Schnitzer, who, in his medical

Page 4 – FINDINGS & RECOMMENDATION

report, stated that plaintiff "was ambulatory without difficulty," and was able to move around from table to chair and back without difficulty. Tr. 437. The ALJ relied, specifically, on this medical report to determine that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible. Id.

While it is true that it is improper to reject plaintiff's testimony based solely on the fact that the medical evidence does not support the level of pain alleged, Lester v. Chater, 81 F.3d at 834, the ALJ also noted that plaintiff's allegations were inconsistent with her reported daily activities. Tr. 20. "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Here, the ALJ looked at inconsistencies in plaintiff's testimony and her conduct, her daily activities, work record, testimony from physicians and third parties, and the effect of the symptoms in order to determine that plaintiff was not credible in describing the severity of her symptoms.

Plaintiff testified that she lives by herself in an apartment. Tr. 49. Plaintiff also testified that she is able to perform the activities of daily living and personal care with no limitations other than that she does them at a slower pace. Tr. 107-110. In addition, plaintiff testified to working a part-time job as a bar tender. Tr. 51. As a bar tender, plaintiff testified to standing for three hours of a four hour shift. Tr. 52. The ALJ provided clear and convincing reasons for discrediting plaintiff by referencing plaintiff's activities and ability to take care of herself. Tr. 18.

The ALJ may also consider the type of medication plaintiff is taking and plaintiff's

willingness to follow prescribed courses of treatment. Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (the court held that conservative treatment was sufficient to discount a claimant's testimony regarding severity of impairment); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (an ALJ may consider many factors in determining claimant's credibility, including "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"). Dr. Geurin, plaintiff's treating physician, noted in an examination on November 15, 2010 that plaintiff "is adamant that she reacts to 'every drug' and does not wish to consider pharmacologic therapy." Tr. 559. Plaintiff only takes garlic and aspirin to alleviate her alleged symptoms. Tr. 95. The ALJ determined that these conservative treatments weighed against the credibility of plaintiff's testimony regarding the severity of her symptoms. Tr. 18.

Plaintiff has not quit smoking, despite several doctors recommending that she quit. Tr. 95. Plaintiff's reaction to her treating doctor's recommendation that she quit smoking was, "I understand that you and other people don't like smoking, but I'm not prepared to say that it or the other things are more important risk factors than other things like the hemochromatosis." Tr. 551. The ALJ referenced plaintiff's unwillingness to quit smoking when he found her testimony regarding the severity of her symptoms not credible. Tr. 18, 20. The ALJ's reasons for discrediting plaintiff's complaints are clear, convincing, and supported by the record.

C. Lay Witness Testimony

Plaintiff's coworker, Shemia Sherman, wrote a letter describing plaintiff's alleged limitations. Tr. 320. The ALJ may reject lay witness testimony if he provides germane reasons for doing so. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). If the ALJ provides germane reasons for rejecting plaintiff's testimony, and the lay witness's testimony is similar, it follows that the ALJ provided germane reasons for rejecting the lay witness's testimony as well.

Page 6 – FINDINGS & RECOMMENDATION

Valentine v. Commisioner Social Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (the court ruled that because the lay witness and plaintiff had similar testimony, the ALJ's reasons for rejecting plaintiff's testimony applied to the lay witness's testimony). The letter describes how plaintiff requires frequent breaks at work and how she cannot carry much weight. Tr. 320. The letter does not reveal any new information, but instead echoes plaintiff's testimony. Tr. 53, 70-73, 320. Here, the ALJ provided clear and convincing reasons for rejecting plaintiff's complaints, and because Ms. Sherman's testimony was similar to those complaints, it follows that the ALJ also gave germane reasons for rejecting Ms. Sherman's testimony.

D.  Evaluating Plaintiff's Impairments

Plaintiff asserts that the ALJ improperly failed to include limitations assessed by plaintiff's treating doctor, plaintiff's own testimony, and the limitations described by the lay witness. Because the ALJ provided clear and convincing reasons to reject the testimony of all three, the ALJ correctly did not include the limitations that plaintiff alleges were missing from the vocational expert's hypothetical. Therefore, the vocational expert's conclusion that plaintiff is able to perform the jobs of credit referencing clerk, laundry pricing clerk, hostess, bartender, telemarketer, retail sales, cashier, or survey taker, was not made in error.

## CONCLUSION

For the reasons stated above, the decision of the Commissioner should be affirmed.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this

Page 7 – FINDINGS & RECOMMENDATION

recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 30th day of September, 2014.

THOMAS M. COFFIN
United States Magistrate Judge